# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5434-15T2

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

     Plaintiff-Respondent,

v.

T.L.,

     Defendant-Appellant.

_____

IN THE MATTER OF M.W., a minor.

_____

Argued October 1, 2018 – Decided November 15, 2018

Before Judges Fasciale, Gooden Brown and Rose.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FN-07-0527-15.

T. Gary Mitchell, Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; T. Gary Mitchell, of counsel and on the brief).

Sara K. Bennett, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Jason W. Rockwell, Assistant Attorney General, of counsel; Sara K. Bennett, on the brief).

Danielle Ruiz, Designated Counsel, argued the cause for minor (Joseph E. Krakora, Public Defender, Law Guardian, attorney; Danielle Ruiz, on the brief).

PER CURIAM

Defendant T.L.[1] appeals from a July 7, 2016 Family Part order concluding, after a fact-finding hearing, that he abused or neglected M.W., his three-year-old stepson and biological child of his wife, R.W.[2] We affirm substantially for the reasons set forth in Judge Linda Lordi Cavanaugh's written opinion that accompanied the order.

## I.

The allegations of abuse and neglect in this case are unrelated to an act or omission by defendant in caring for M.W. Rather, this appeal has its genesis in

---

[1] We use initials to protect the privacy of the parties. See R. 1:38-3(d)(12).

[2] In the same decision, the trial judge determined the abuse and neglect allegations against R.W. were not substantiated.

the death of N.T., defendant's then three-year-old daughter, who was killed at the hands of defendant five years before defendant resided with R.W. and M.W.

Specifically, N.T. died in November 2009 of battered child syndrome while living with defendant and his then wife, S.L.[3] In June 2010, a Family Part judge determined defendant had abused N.T. and caused her death.[4] Thereafter, defendant was arrested and indicted for first-degree murder, N.J.S.A. 2C:11-3(a)(1), and second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a). The circumstances of N.T.'s death, defendant's guilty plea to an amended charge of second-degree manslaughter, N.J.S.A. 2C:11-4,[5] his subsequent denial of guilt, and his inability to deal with the "stressors" that led to N.T.'s death, underscored the reasons for Judge Cavanaugh's determination that defendant presented a substantial risk of harm to M.W.

---

[3] S.L. is referenced in the record as defendant's girlfriend, fiancé and wife; she was not the biological mother of N.T.

[4] Following N.T.'s death, defendant's and S.L.'s parental rights to their then five-year-old biological daughter, K.T., were terminated. We affirmed the trial court's decision on appeal. N.J. Div. of Child Prot. & Permanency v. S.E.L. and T.S.D.L., Nos. A-6200-11, A-6201-11 (App. Div. May 1, 2014).

[5] Defendant was sentenced to a five-year prison term followed by a three-year period of parole supervision, pursuant to the No Early Release Act, N.J.S.A. 43-7.2.

A-5434-15T2

Judge Cavanaugh's twenty-five-page opinion sets forth the facts and procedural history in detail, and we incorporate by reference those findings here. In sum, a few months after he was released from prison, defendant married R.W. and lived with her and M.W. Notably, the Division of Parole (DOP) "initially approved [that] living situation then determined [it] made a mistake and order[ed defendant] to leave the home." Nonetheless, noting concerns about M.W.'s safety while defendant had been living in R.W.'s home, the DOP contacted the Division of Child Protection and Permanency (Division). The Division then "began its assessment of the family considering [R.W.] as the primary caregiver and [defendant] not residing in the home."

Initially, the Division determined the abuse and neglect allegations against defendant and R.W. were "not established," but the case remained open "for short-term supervision at a minimum." Following administrative review, the Division changed its findings to "[s]ubstantiated" for defendant and "[e]stablished" for R.W.[6] Thereafter, the Division filed an order to show cause and verified complaint for the care and supervision of M.W. Following the

---

[6] Sometime before the Division amended its findings, the Department of Children and Families Office of Legal Affairs (OLA) informed the Division that N.T.'s biological mother had filed a lawsuit against the State of New Jersey and OLA had "requested documents relating to [defendant's] [p]arole [s]tipulations."

hearing, the judge ordered defendant to have no contact with M.W. During the ensuing litigation, defendant was evaluated by the Division's psychology expert, Dr. Mark Singer, Ed.D., and defense expert, Dr. Matthew B. Johnson, Ph.D.

Pertinent to this appeal, following a three-day fact-finding hearing, Judge Cavanaugh considered the testimony of Dr. Singer and two caseworkers on behalf of the Division, the testimony of Dr. Johnson on behalf of defendant, and multiple documents, including the experts' reports. Although the judge found both experts credible and well-versed in their fields, she ultimately rejected Dr. Johnson's opinion that defendant did not present a risk to M.W. because the doctor's "evaluations and recommendations [were] predicated on an acceptance of and full belief in [defendant's] version of the events of [N.T.'s] death." In doing so, the judge considered, but rejected Dr. Johnson's opinion that defendant pled guilty to manslaughter "purely on 'pragmatic grounds[]' . . . [un]related to any risk that [defendant] might present in the home."

Conversely, the judge credited Dr. Singer's testimony noting the doctor

> faced a dilemma in assessing [defendant]; on one hand [defendant] had voluntarily pled guilty to a crime in court but on the other hand he [was] indicating that although he read a statement prepared for him at his plea colloquy, he insist[ed] he [was] not responsible for the death of his child, [N.T.]. The contradiction presented by these statements is of great significance to Dr. Singer's analysis, findings and recommendations.

5

Dr. Singer opined that the most reliable indicator of future behavior is past behavior and without appropriate intervention there is no basis for him to determine that such behavior will not occur again. Dr. Singer stated that if [defendant were] responsible and there have been no intervening factors to address the variables that led to [N.T.]'s death then the behavior is likely to repeat itself in the future. Dr. Singer maintains that [defendant] had risk factors surrounding [N.T.]'s death that have not been addressed and, as a result, he should not have unsupervised contact with [M.W.] until those risk factors are properly addressed as they are likely to continue to exist.

Dr. Singer repeatedly stated that the risk factors that existed at the time of [N.T.]'s death are unknown to him but that based on the totality of the data that he considered and having no evidence to suggest that those risk factors were mitigated, [defendant] would present a risk of harm to [M.W.]. Dr. Singer recommended that [defendant] participate in therapy to identify and address those risk factors that were present in 2009 in an effort to mitigate the risk to [M.W.] today.

On cross-examination, Dr. Singer stressed that the risk factor is not [defendant]'s guilty plea. He acknowledged that currently, [defendant] has several positive factors. . . . But, the expert continued, those positive factors do not mitigate the presence of risk factors and stressors that likely led to [N.T.]'s death in 2009.

Judge Cavanaugh concluded the Division established by a preponderance of the evidence that defendant abused and neglected M.W. as proscribed by N.J.S.A. 9:6-8.21(c)(4)(b). The judge elaborated:

6

Pursuant to N.J.S.A. 9:6-8.46(a)(1), the proof of abuse and neglect of [N.T.] is admissible as to the abuse and neglect of [M.W.]. When considering [N.T.]'s death even if looking at those facts in the light most favorable to [defendant], the [c]ourt finds that [defendant] was at a minimum complicit in and responsible for her death. The [c]ourt is simply not convinced that [defendant] had no involvement in [N.T.]'s death. He admitted to same when he pled guilty. . . . Counsel for [defendant] consistently argued that the [c]ourt should look beyond the guilty plea to the possible reasons therefore. She argued that [defendant]'s statements during his evaluations that he was not the party responsible for the child's death should be persuasive to the [c]ourt. They simply are not. Furthermore the [c]ourt is constrained from doing so as [defendant] is collaterally estopped from asserting any claims of innocence now. In Re Guardianship of J.O., 327 N.J. Super. 304, 309 (App. Div. 2000) . . . .

 . . . .

Additionally, [defendant] has been substantiated for the death of [N.T.], a finding of abuse and neglect has been entered and his parental rights to his daughter [K.T.] were terminated. Regardless of any reasons offered as to why a plea was entered, the [c]ourt must also accept the facts of the plea entered, consider the admissions made at the time and the sentence for the second-degree manslaughter.

The [c]ourt finds it is unfortunate that the conduct and actions or inactions of [defendant] that led to [N.T.]'s death have yet to be addressed but this is solely due to [defendant] and his failure to truly accept responsibility for his actions. He has not dealt with the "stressors" to which Dr. Singer referred that existed at the time of [N.T.]'s death, the ones that may explain

7

what happened and why, the ones that should be addressed to insure such an act never happens again. [Defendant] has not given this [c]ourt any reason to believe that he is not a substantial risk of harm to [M.W.]. The [c]ourt puts little weight in the argument that Dr. Johnson thinks [defendant] is at a low[]risk of reoffending and that he has lived with [R.W.] and [M.W.] for four months without prior involvement by the Division. This is not competent or material proof that [M.W.] is not at risk of harm[ because R.W. stated that before defendant was] removed from the home [defendant] primarily had supervised access to [M.W.] because of the convenience of the house schedule thus reducing his exposure and access to [M.W.].

At the present time the cautionary steps that may be necessary to prevent [M.W.] from a risk of harm are unknown to the [c]ourt. Again, this is primarily laid at the feet of [defendant] and his inability or unwillingness to acknowledge that he played a role in the death of his daughter.

Defendant now appeals. He primarily argues that the record is insufficient to establish he posed an imminent danger and substantial risk of harm to M.W. based on his daughter's death six years earlier. He also contends the court abused its discretion by denying his application to determine the basis for the change in the Division's findings from not established to substantiated, and by barring Dr. Johnson from testifying about the discrepancy between defendant's plea allocution and his subsequent denial that he caused N.T.'s death. In conjunction with those arguments, defendant claims the Division concealed

documents during the litigation of this matter. M.W.'s law guardian joins the Division in urging us to affirm.

## II.

Our standard of review of the Family Part's fact-finding determination is limited. On appeal from orders issued in Title 9 cases, we accord considerable deference to the trial court's credibility determinations and findings of fact, as long as those findings are supported by adequate, substantial, and credible evidence. N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 278-79 (2007). "[I]f there is substantial credible evidence in the record to support the trial court's findings, we will not disturb those findings." N.J. Div. of Youth & Family Servs. v. L.L., 201 N.J. 210, 226 (2010); see also N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 342-43 (2010); N.J.S.A. 9:6-8.46(b) (A court's finding of abuse or neglect in a Title 9 action must be proven by a preponderance of "competent, material, and relevant evidence . . . .").

However, "if the trial court's conclusions are 'clearly mistaken or wide of the mark[,]' an appellate court must intervene to ensure the fairness of the proceeding." L.L., 201 N.J. at 227 (alteration in original) (quoting N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008)). We also owe no

deference to the trial court's legal conclusions, which we review de novo.  State v. Smith, 212 N.J. 365, 387 (2012).

Title 9 cases are fact-sensitive, and the court should "base its findings on the totality of circumstances . . . ."  N.J. Div. of Youth & Family Servs. v. V.T., 423 N.J. Super. 320, 329 (App. Div. 2011).  Notably, the Title 9 proof standard is less stringent than in guardianship cases for the termination of parental rights, which instead must be proven by clear and convincing evidence.  See N.J.S.A. 30:4C-15.1(a).

N.J.S.A. 9:6-8.21(c) defines various circumstances that can comprise the abuse or neglect of a child.  Among other things, the statute specifically covers:

> [A] child whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent or guardian, as herein defined, to exercise a minimum degree of care . . . in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof, including the infliction of excessive corporal punishment; or by any other acts of a similarly serious nature requiring the aid of the court . . . .
>
> [N.J.S.A. 9:6-8.21(c)(4)(b) (emphasis added).]

Our Supreme Court has noted, "The law's paramount concern is the safety of the children, and not the culpability of parental conduct."  N.J. Div. of Youth

& Family Servs. v. A.L., 213 N.J. 1, 18 (2013) (citations and internal quotation marks omitted); see also G.S. v. Div. of Youth & Family Servs., 157 N.J. 161, 177 (1999). "The focus in abuse and neglect matters . . . is on promptly protecting a child who has suffered harm or faces imminent danger." A.L., 213 N.J. at 18 (citing N.J.S.A. 9:6-8.21(c)(4)).

Relevant here, a court need not wait until a child is actually harmed or neglected before it can act in the welfare of that minor. N.J. Div. of Youth & Family Servs. v. V.M., 408 N.J. Super. 222, 235 (App. Div. 2009) (citing In re Guardianship of D.M.H., 161 N.J. 365, 383 (1999)). Thus, "[i]n the absence of actual harm, a finding of abuse and neglect can be based on proof of imminent danger and substantial risk of harm." A.L., 213 N.J. at 23 (citing N.J.S.A. 9:6-8.21(c)(4)(b)).

Further, our courts have recognized that "[p]redictions as to probable future conduct can only be based upon past performance. . . ." N.J. Div. of Youth & Family Servs. v. C.H., 414 N.J. Super. 472, 482 (App. Div. 2010) (alteration in original) (quoting J. v. M., 157 N.J. Super. 478, 493 (App. Div. 1978)). "We cannot conceive that the Legislature intended to guarantee to parents at least one chance to kill or abuse each child." J. v. M., 157 N.J. Super. at 493. Nonetheless, our Supreme Court has cautioned that where, as here, an

11

"allegation of child neglect in which the conduct of the parent or caretaker does not cause actual harm is fact-sensitive and must be resolved on a case-by-case basis." N.J. Dep't of Children & Families, Div. of Child Prot. & Permanency v. E.D.-O., 223 N.J. 166, 192 (2015).

Applying our limited scope of review and these standards, here, we are satisfied there was competent, credible evidence in the record to support Judge Cavanaugh's finding that defendant abused or neglected R.W. We add the following comments.

The evidence of imminent danger and substantial risk of harm is readily apparent from the record. Notwithstanding defendant's claims of innocence here, defendant pled guilty in 2013 to causing his three-year-old daughter's death, detailing, in his own words, how he caused her death. In particular, defendant stated:

> I lost my temper with my daughter [N.T.] when she went to the bathroom in -- I shook her hard, scolded her, and pushed her into the corner . . . .
>
> However, when I pushed her, I pushed her too hard and her head hit the wall hard and she had taken a fall to the floor, striking her head. Immediately, I picked her up and thought she was okay. Hours later, I went to the store when I thought she was taking a nap.
>
> After I got home, my wife, [S.L.] said [N.T.] was having trouble breathing. We tried to aid [N.T.] on our

> own and delayed call[ing] 9-1-1 . . . for a significant
> period of time.

Moreover, defendant never challenged his conviction. Specifically, defendant did not file a motion to vacate his guilty plea, a post-conviction relief petition, or an appeal of his conviction or sentence. Indeed, in response to the court's inquiry after his plea allocution, defendant confirmed he was pleading guilty to manslaughter because he was "in fact" guilty.

While evidence of defendant's prior abuse of N.T. and K.T. is "admissible evidence on the issue of the abuse or neglect of [M.W.]," N.J.S.A. 9:6-8.46(a)(1), J. v. M., 157 N.J. Super. at 493, the trial judge astutely recognized defendant's manslaughter conviction, alone, would not trigger a substantial risk of harm to M.W. Rather, defendant failed to address the risk factors that led to N.T.'s death. Further, as the judge observed, defendant's "inability or unwillingness to acknowledge that he played a role in the death of his daughter" was his own doing. In essence, because defendant did not address the factors that led to N.T.'s death, those factors could not be identified by the experts. Thus, defendant's argument that Dr. Singer failed to identify the risk factors and, as such, the judge improperly "fill[ed] in missing information on [her] own[,]" A.L., 213 N.J. at 28, is unavailing.

More importantly, however, defendant's failure to address the factors that resulted in N.T.'s death likewise placed M.W. in imminent danger and substantial risk of harm. In this regard, defendant's reliance on New Jersey Division of Child Protection & Permanency v. S.W., 448 N.J. Super. 180 (App. Div. 2017), is misplaced. In S.W., we reversed the trial court's determination that defendant's relapse and use of cocaine after an arrest exposed his children to imminent danger. Id. at 194. Conversely, here, because defendant refused to address the risk factors that led to N.T.'s death, M.W. was exposed to imminent danger and a substantial risk of harm. Thus the judge correctly based her decision on defendant's failure to address the "stressors" that previously led to his manslaughter conviction for causing N.T.'s death.

We also find unpersuasive defendant's argument that the court failed to permit his expert to explain the discrepancy between his guilty plea allocution and his later statements of denial. Clearly, the judge considered the defense argument that she "should look beyond the guilty plea to the possible reasons therefore[,]" based on defendant's exculpatory statements to both experts. Instead, the judge properly accepted defendant's sworn testimony under oath on the prior criminal proceedings in disallowing defendant's contrary explanation here. See Townsend v. Pierre, 221 N.J. 36, 52 (2015) ("The admission or

14

exclusion of expert testimony is committed to the sound discretion of the trial court.").

Contrary to defendant's next contention, the circumstances surrounding the Division's determination to change its abuse and neglect finding from "not established" to "substantiated" are not relevant to these proceedings. Those findings are administrative, see N.J.A.C. 3A:10-7.3, and, as the judge correctly noted, "the findings that the Division makes are separate from the findings of [the trial court]." Accord In re an Allegation of Physical Abuse Concerning R.P., 333 N.J. Super. 105, 117 (App. Div. 2000) (citation omitted) ("A finding by [the Division] that child abuse charges have not been substantiated, but that there is some indication a child was harmed or placed at risk of harm, is purely investigatory in nature, with none of the procedural protections of an adjudicatory proceeding."). Importantly, here, as the judge observed, "the initial investigation assumed [defendant] was not and would not be residing in the home." We thus find no abuse of discretion in the court's denial of defendant's application to determine the basis for the change in the Division's findings. See, e.g., Hisenaj v. Kuehner, 194 N.J. 6, 10 (2008) (noting evidentiary rulings are reviewed for abuse of discretion).

Nor are we persuaded by defendant's argument that the Division withheld the final page of defendant's criminal judgment of conviction (JOC), which sets forth the court's findings at sentencing as to aggravating and mitigating factors, N.J.S.A. 2C:44-1(a) and (b). The record reveals the entire JOC was furnished to defendant in discovery. Further, because the sentencing transcript is not part of the record before us, it is unclear why the judge found "defendant's conduct was the result of circumstances unlikely to recur." See N.J.S.A. 2C:44-1(b)(8).

Under the totality of these circumstances, we discern no basis for disturbing Judge Cavanaugh's determination that T.L.'s past abuse and neglect of N.T. and his failure to address the stressors that led to her death, placed M.W. at risk of serious harm and constituted abuse and neglect within the meaning of N.J.S.A. 9:6-8.21(c)(4).

To the extent not addressed, defendant's remaining arguments lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5434-15T2