999 A.2d 501 (2010)
414 N.J. Super. 472
DEPARTMENT OF CHILDREN AND FAMILIES, DIVISION OF YOUTH AND FAMILY SERVICES, Petitioner-Respondent,
v.
C.H., Respondent-Appellant.
DOCKET NO. A-4786-08T1.
Superior Court of New Jersey, Appellate Division.
Submitted May 26, 2010.
Decided July 28, 2010.
*502 Marianne Rebel Brown, attorney for appellant.
Paula T. Dow, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Clinton Page, Deputy Attorney General, on the brief).
*503 Before Judges AXELRAD, SAPP-PETERSON and ESPINOSA.
The opinion of the court was delivered by SAPP-PETERSON, J.A.D.
Appellant C.H. appeals from a final administrative agency decision by the Director of the New Jersey Division of Youth and Family Services (Division) finding that on November 20, 2003, appellant had committed an act of child abuse as defined by N.J.S.A. 9:6-8.21(c)(4)(b) by failing to exercise a minimum degree of care by unreasonably inflicting excessive corporal punishment upon her daughter, T.H. We affirm.
The incident that triggered the Division's finding against C.H. resulted from a referral it received on November 21, 2003, from T.H.'s school nurse, who reported that T.H.'s teacher brought T.H. to her office where she observed red demarcations on the right side of T.H.'s face, three to four inches long, and also observed dark red scratches, two inches in length, on T.H.'s right elbow and left cheek, as well as a greenish demarcation on the middle of her back. The Division dispatched two workers to the school where they interviewed T.H., who stated that her mother had beaten her with a paddle the previous evening after learning that she had told a neighbor that they were without electricity in the home. The school nurse did not believe that T.H. required medical attention. The workers took pictures of the bruises they observed and returned to their office where they discussed the matter with their supervisor. It was agreed at that time that there was no need to involve the police or the prosecutor.
Later that day, the workers appeared at C.H.'s home and advised her of why they were there. C.H. explained that the electricity had gone out on November 19, due to a storm and was restored on November 20. She confirmed that T.H. had gone across the street to a neighbor's house and told the neighbor that there was no electricity in their home. She admitted to spanking T.H. but only on her buttocks while T.H. was still clothed. She told the workers that T.H. had no marks on her when she left for school earlier that day and offered a number of possibilities for the marks, including the sensitive nature of T.H.'s skin that may have developed into a rash from lotion, playing with the cat around her neck, as T.H. was known to do, or doing somersaults. C.H. also suggested the injuries may have been sustained at school.
Two weeks later, at the request of the Division, Dr. Patty Vitale conducted a physical examination of T.H., who was accompanied to the examination by C.H. Dr. Vitale authored a report that was admitted into evidence at the hearing without objection. In the report, Dr. Vitale noted that she found T.H. to be a "well-developed" and "well-nourished female." She was unable to confirm the injuries to the face and elbow because the injuries had since "desorbed without any residual." Although she observed some old scarring on the body, there was no indication of the source of those scars.
Dr. Vitale's report also discussed her conversation with C.H. during which C.H. told her that T.H.'s story was not true and that T.H., like all children, sometimes did not tell the truth. C.H. also explained to Dr. Vitale that she used other forms of discipline upon T.H., but spanked her when "more significant discipline [was] required." She also shared with Dr. Vitale her experience with undisciplined children in her professional capacity and that she intended to use discipline in an effort to prevent her daughter from "end[ing] up on the streets or doing drugs[.]"
*504 Dr. Vitale, in addition to performing a physical examination of T.H., also interviewed her. T.H. told Dr. Vitale that "mom started beating me" using a paddle "[o]n my eye like two times and on my back, that's it[,]" and that her mom hit her with the paddle on her "[f]ace, eyes, [and] cheek." T.H. told Dr. Vitale that this was the only time that C.H. had ever hit her in this way. However, when Dr. Vitale asked her if her mother had ever hit her in the face, she said "No" and reported that her cheek had been red because she scraped herself at home. Further, when asked whether her mom hit her on the face or whether she fell, she said, "I fell."
Dr. Vitale concluded that C.H.'s discipline was inappropriate and that she had used excessive force when disciplining T.H. Dr. Vitale also expressed her concern that C.H. believed that the discipline she administered to T.H. was appropriate. She believed that C.H. would benefit from parenting education and recommended that the Division "assess whether mom could benefit from additional support services."
In a letter dated February 23, 2004, the Division notified C.H. that it had affirmed the finding made by its district office that child abuse was substantiated as to T.H. C.H. appealed this decision and the matter was assigned to an administrative law judge (ALJ) as a contested case and a hearing was conducted. See N.J.S.A. 52:14F-1 to -23.
Following the presentation of the evidence, the ALJ found the evidence was insufficient to sustain the allegation that C.H. committed an act of physical child abuse under N.J.S.A. 9:6-8.21(c) and that the Division "did not have `good cause' to make a finding of substantiated child abuse." Specifically, the ALJ concluded:
There is no evidence in the record to establish that the injuries suffered by T.H. were either life-threatening or so serious as to cause any disfigurement or loss or impairment of the function of any bodily organ. There is no indication that either the school nurse or the DYFS investigator believed these injuries were sufficiently serious so as to require medical attention. I FIND that these are not serious injuries that are likely to cause death or serious or protracted disfigurement or protracted loss or impairment of the function of any bodily organ. I also FIND that there is no evidence in the record that the child's physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired. Obviously, if there had been a series of these incidents involving respondent, my findings could differ greatly, since multiple incidents might create or allow to be created a substantial or ongoing risk of physical injury to such child.
I am convinced that C.H. is a good parent who believed she was acting in her daughter's best interest. I FIND that what occurred was an isolated incident and did not involve the infliction of excessive corporal punishment resulting in serious injuries or impairment.
The ALJ recommended the reversal of the Division's findings and that C.H.'s name should not be placed on the Central Registry of substantiated child abusers.
The Director issued a final agency decision rejecting the recommendation of the ALJ. The Director found striking T.H. "repeatedly with a paddle, multiple times and with sufficient force to cause marks could certainly qualify as abuse per N.J.S.A. 9:6-8.21(c)(4)(b)[.]" Additionally, the Director expressed the view that when consideration is given to the reason why C.H. admittedly struck her daughter, because she told the neighbor there was no electricity in their home, C.H.'s actions went "beyond any semblance of reason, and provide[d] *505 no justification for C.H.'s decision to administer any measure of corporal punishment" to a five-year old child.
The Director also considered that there had been "a history of questionable administration of corporal punishment." She noted that C.H. testified that she had physically paddled T.H. two months earlier and told Division investigators that she physically disciplined T.H. one to two times per month. Further, during a prior Division investigation conducted in 2001, when T.H. was only three years old, C.H. admitted that she routinely disciplined T.H. by pinching the child's inner thighs. The Director concluded that the "pattern of corporal punishment on such a young child is troubling and, when considered in concert with [the] instant matter, there is ample support to uphold this substantiation." The ensuing appeal followed.
On appeal C.H. contends:
POINT I
THE FINDING BY [THE] ADMINISTRATIVE LAW JUDGE . . . THAT C.H. DID NOT ABUSE OR NEGLECT HER DAUGHTER WAS NOT REJECTED BY [THE] DEPARTMENT OF CHILDREN AND FAMILIES, DIVISION OF YOUTH AND FAMILY SERVICES, ON A TIMELY BASIS. [THE ADMINISTRATIVE LAW JUDGE]'S FINDING SHOULD BE ADOPTED.
POINT II
THE DEPARTMENT OF FAMILIES, DIVISION OF YOUTH AND FAMILY SERVICES DID NOT MEET THE STANDARD REQUIRED TO MODIFY OR REJECT THE FINDING OF THE ADMINISTRATIVE LAW JUDGE.
POINT III
THE RECORD DOES NOT SUBSTANTIATE A FINDING OF CHILD ABUSE. THE FINAL DECISION OF THE DEPARTMENT OF CHILDREN AND FAMILIES, DIVISION[] OF YOUTH AND FAMILY SERVICES MUST BE REVERSED.
We first dispense, as meritless, appellant's contention that the Director failed to reject the ALJ's recommended decision in a timely fashion. The Division obtained two orders extending the time in which to issue its final agency decision. See N.J.A.C. 1:1-18.8 (permitting extensions of time limits in which to file a final decision). The final decision was issued prior to the expiration of the second extension.
Turning to the remaining arguments, we begin by noting that in challenging an agency's determination, an appellant carries a substantial burden of persuasion, and the agency's determination carries a presumption of reasonableness. Gloucester County Welfare Bd. v. State Civil Serv. Comm'n, 93 N.J. 384, 390-91, 461 A.2d 575 (1983). Consequently, the scope of our review of the issue before us remains limited. "Reviewing courts should give considerable weight to any agency's interpretation of a statute the agency is charged with enforcing." G.S. v.Dep't of Human Servs., 157 N.J. 161, 170, 723 A.2d 1 (1999). "Absent arbitrary, unreasonable or capricious action, the agency's determination must be affirmed." Ibid. (citing R & R Mktg., L.L.C. v. Brown-Forman Corp., 158 N.J. 170, 175, 729 A.2d 1 (1999)). "Although we recognize that deference is generally given to an administrative agency charged with interpretation of the law, we are not bound by the agency's legal opinions." Levine v. State Dep't of Transp., 338 N.J.Super. 28, 32, 768 A.2d 192 (App.Div.2001) (citing G.S. v. Dep't of Human Servs., supra, 157 N.J. at 170, 723 A.2d 612). Additionally, where an agency head rejects a recommendation of an ALJ, the basis for rejecting *506 the recommendation must be set forth by the agency head with particularity and new or modified findings supported by sufficient, competent, and credible evidence in the record must be made. N.J.S.A. 52:14B-10(c).
Here, in rejecting the ALJ's recommendation, the Director found the ALJ's conclusion that "there is no evidence in the record that the child's physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired" was "inconsistent with the evidence in the record." We agree.
N.J.S.A. 9:6-8.21(c)(4)(b) defines an abused or neglected child as:
a child whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent or guardian, as herein defined, to exercise a minimum degree of care . . . (b) in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof, including the infliction of excessive corporal punishment; or by any other acts of a similarly serious nature requiring the aid of the court[.]
[N.J.S.A. 9:6-8.21(c) (emphasis added).]
We have held that the phrase "minimum degree of care" refers to conduct that is "grossly or wantonly negligent, but not necessarily intentional." G.S. v. Dep't of Human Servs., supra, 157 N.J. at 178, 723 A.2d 612. Child abuse ranges from situations of "slight inadvertence to malicious purpose to inflict injury." Ibid. As the Director stated, there is absolutely nothing reasonable about inflicting harm, in the form of paddling, upon a five-year-old child because the child told a neighbor that their home was without electricity, a situation which the Director appropriately characterized as "innocuous." Moreover, evidence that T.H.'s "physical, mental or emotional condition . . . is in imminent danger of becoming impaired as the result of the failure of [C.H.] to exercise a minimum degree of care" because of the unreasonable infliction of corporal punishment was established by C.H.'s admitted use of corporal punishment regularly, including the pinching of T.H. when she was three years old as a form of punishment and her belief that no one could tell her how to discipline her own child. As we have previously recognized, "[i]n child abuse and neglect cases the elements of proof are synergistically related. Each proven act of neglect has some effect on the [child]. One act may be `substantial' or the sum of many acts may be `substantial.'" N.J. Div. of Youth and Family Servs. v. C.M., 181 N.J.Super. 190, 201, 436 A.2d 1158 (1981). See also Div. of Youth & Family Servs. v. Robert M., 347 N.J.Super. 44, 68, 788 A.2d 888 (App.Div.), certif. denied, 174 N.J. 39, 803 A.2d 635 (2002).
In Robert M., the Division appealed the dismissal of its complaint for continuing custody of the four biological children of the defendants. Id. at 47, 788 A.2d 888. In addition to their own biological children, the defendants adopted three children from Russia, one of whom died less than one year later. Id. at 47-50, 788 A.2d 888. His death was ruled a homicide and the defendants were arrested and initially charged with child endangerment but were later indicted and charged with, among other offenses, aggravated manslaughter. Id. at 52, 788 A.2d 888. They entered pleas of not guilty and were awaiting trial at the time the trial court conducted its fact-finding hearing on the abuse and neglect charges. Id. at 57, 788 A.2d 888. At the hearing, the court excluded interviews that had been taken of the four older children in connection with a risk assessment the Division had requested because *507 of discovery violations. Id. at 58, 788 A.2d 888. During these interviews, the children described the discipline to which the decedent had been exposed. Id. at 53-55, 788 A.2d 888. We granted leave to the Division to appeal the dismissal of its complaint and concluded the trial court committed reversible error when it excluded "relevant proof of parental abuse which could be considered on the question of past or potential abuse of the other children." Id. at 67, 788 A.2d 888. We observed that:
[a]lthough the absence of past physical abuse to the natural children may infer their future safety, the alleged treatment of [the decedent] could be a dangerous harbinger to one or more of the others. As we stated in J. & E. v. M. & F., 157 N.J.Super. 478, 493 [385 A.2d 240] (App.Div.), certif. denied, 77 N.J. 490 [391 A.2d 504] (1978)[:]
Predictions as to probable future conduct can only be based upon past performance. . . . We cannot conceive that the Legislature intended to guarantee parents at least one chance to kill or abuse each child. Evidence of parents' fitness or unfitness can be gleaned not only [from] their past treatment of the child in question but also from the quality of care given to other children in their custody.
[Id. at 68, 788 A.2d 888 (emphasis added).]
"[A]s a part of its burden of proof, [in abuse and neglect cases] the State must still demonstrate by a preponderance of the competent, material and relevant evidence. . . the probability of present or future harm." N.J. Div. of Youth & Family Servs. v. S.S., 372 N.J.Super. 13, 24, 855 A.2d 8 (App.Div.2004), certif. denied, 182 N.J. 426, 866 A.2d 983 (2005). The evidence presented regarding the Division's prior experience with C.H. was relevant to meeting this burden. The ALJ permitted the Division to introduce evidence of its prior experience with C.H. in connection with an earlier referral as relevant to the issue of C.H.'s knowledge that the manner in which she was disciplining T.H. was of concern to the Division. Contrary to C.H.'s argument on appeal, this evidence was also relevant to the likelihood that she would continue to expose T.H. to the unjustifiable discipline to which she exposed T.H. on November 20, 2003.
We are persuaded that there was more than sufficient evidence in the record demonstrating that the ALJ's ultimate findings that the incident of November 20, 2003 was isolated and that abuse had not been substantiated were not supported by the record. The Director properly considered the entire record presented to the ALJ before rejecting the recommendation and clearly articulated her reasons for doing so. N.J.S.A. 52:14B-10(c).
Affirmed.