# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0390-18T2

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

 Plaintiff-Respondent,

v.

J.R.,

 Defendant,

and

T.B.,

 Defendant-Appellant.

_____

IN THE MATTER OF TY.B.
and TYR.B.,

 Minors.

_____

  Submitted November 18, 2019 – Decided December 24, 2019

  Before Judges Messano and Vernoia.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FN-13-0082-17.

Joseph E. Krakora, Public Defender, attorney for appellant (Robyn A. Veasey, Deputy Public Defender, of counsel; Ilea Anne Kozak, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Alicia Y. Bergman, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor Tyr.B. (David Ben Valentin, Assistant Deputy Public Defender, on the brief).

PER CURIAM

Defendant T.B., the father of Ty.B. (Tricia) and Tyr.B. (Tom), appeals the Family Part's May 23, 2017 order following a fact-finding hearing, see N.J.S.A. 9:6-8.44, that found defendant abused Tricia. See N.J.S.A. 9:6-8.21(c) (defining an "abused or neglected child").[1] Defendant contends the evidence produced by the Division of Child Protection and Permanency (the Division) was insufficient to prove that the "isolated incident" in which he disciplined Tricia was "grossly negligent or unreasonable." Defendant also argues the Division urged, and the

---

[1] We use initials and fictitious names to protect the privacy of the parties and child. R. 1:38-3(d)(12).

judge "impliedly" drew, an adverse inference against him because defendant asserted his Fifth Amendment right against self-incrimination and chose not to testify at the hearing.

The Division contends the evidence was more than sufficient to prove defendant abused Tricia, and the judge never drew an adverse inference in response to defendant's exercise of his constitutional rights. Along with Tricia's Law Guardian, the Division urges us to affirm the order.

Having considered the record in light of applicable legal principles, we affirm.

I.

The Division received a referral in August 2016 as the result of a domestic violence incident between defendant and Tricia's mother, J.R. (Jenny). Defendant was arrested. Jenny moved to a shelter with Tom; Tricia, who was fifteen-years old at the time, moved in with her maternal aunt, B.R. (Brenda). Jenny obtained a temporary restraining order under the Prevention of Domestic Violence Act, 2C:25-17 to -35, and the hearing for a final restraining order (FRO) was set for September 12, 2016.[2]

---

[2] The record reveals the court issued an FRO to Jenny.

A-0390-18T2

In response to a phone call from Jenny, on September 14, the Division's caseworker went to Brenda's home and spoke with Tricia. Tricia said defendant texted her repeatedly on September 11 because he wanted her to appear as a witness at the FRO hearing the following day. Tricia refused. At 1 a.m. on September 12, defendant appeared at Brenda's home and told Tricia she must come to court later that day. When the child refused, defendant slapped her face, grabbed her wrist or arm, and pulled her hair, ripping three braids from her scalp. The Division's caseworker observed the bald spots while interviewing Tricia, and the judge admitted photographs of Tricia's scalp into evidence.

After the incident, Tricia went missing from her aunt's home. Police found her at defendant's home several days later. The caseworker testified as to a conversation she had with defendant in Tricia's presence at the police department. Defendant admitted going to Brenda's home because he wanted Tricia to testify at the FRO hearing. He claimed that when he walked into Tricia's room, the smell of marijuana was overwhelming, and he confronted his daughter about it. When Tricia spoke back to him, defendant acknowledged grabbing Tricia's arm and "mushing" her head, which cause her to fall backwards. Defendant did not recall pulling his daughter's hair from her head.

4

Brenda testified at the fact-finding hearing that she found human hair in the garbage can and questioned Tricia about it. Tricia told her aunt about the early morning incident, which Brenda had slept through. Brenda observed small bald spots on the child's scalp. Brenda testified Tricia "said she didn't want to testify [at the FRO hearing] because . . . she didn't want to lie on her mother."

After the Division rested, defense counsel sought an adjournment. Citing this latter testimony, she told the judge defendant needed to consult with his criminal lawyer.[3] Counsel said defendant had intended to testify, but now was "concerned about a witness tampering charge." Defendant told the judge Tricia's claim was not contained anywhere in the Division's reports.

The judge denied the request and conducted a voir dire of defendant at counsel's request. Although initially indicating he intended to testify, after taking the witness stand, defendant changed his mind and elected otherwise. After hearing closing arguments, the judge rendered an oral decision, which we discuss more fully below, and entered the order under review.

---

[3] It is unclear from the record what were the exact charges, if any, defendant faced as a result of the August and September incidents.

II.

Defendant first contends that any harm he caused Tricia was minimal, accidental, and the result of his reasonable attempt to discipline his daughter. We disagree.

"[A]ppellate courts 'defer to the factual findings of the trial court because it has the opportunity to make first-hand credibility judgments about the witnesses who appear on the stand; it has a feel of the case that can never be realized by a review of the cold record.'" N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 342–43 (2010) (quoting N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008)). Moreover, "[b]ecause of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding." Cesare v. Cesare, 154 N.J. 394, 413 (1998). However, when the issue presented turns on a legal conclusion derived from the Family Part's factfinding, "we are not required to defer." N.J. Div. of Youth & Family Servs. v. A.R., 419 N.J. Super. 538, 542–43 (App. Div. 2011).

"In general, 'Title 9 controls the adjudication of abuse and neglect cases.'" Dep't of Children & Families, Div. of Child Prot. & Permanency v. E.D.-O., 223 N.J. 166, 177 (2015) (quoting M.C. III, 201 N.J. at 343). "The focus of Title 9

A-0390-18T2

'is not the "culpability of parental conduct" but rather the "protection of children.""" N.J. Div. of Child Prot. & Permanency v. A.B., 231 N.J. 354, 368 (2017) (quoting E.D.-O., 223 N.J. at 178). Among other things, Title Nine defines an "abused or neglected child" as one under the age of eighteen whose

> physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent or guardian . . . to exercise a minimum degree of care . . . by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof, including the infliction of excessive corporal punishment; or by any other acts of a similarly serious nature requiring the aid of the court[.]
>
> [N.J.S.A. 9:6-8.21c(4)(b) (emphasis added).]

The statute only forbids "excessive" corporal punishment. Thus, the Court has held that "occasional discipline does not fit a common sense application of the statutory prohibition . . . ." N.J. Div. of Youth & Family Servs. v. P.W.R., 205 N.J. 17, 35 (2011); see also N.J. Div. of Youth and Family Servs. v. H.P., 424 N.J. Super. 210, 228 (App. Div. 2011) (holding "corporal punishment" that is not excessive "does not constitute abuse or neglect").

Excessive corporal punishment cases are fact-sensitive and "idiosyncratic." P.W.R., 205 N.J. at 33. We "ought not assume that what may be 'excessive' corporal punishment for a . . . child must also constitute . . .

excessive corporal punishment in another setting." Ibid. "[A] parent may inflict moderate correction such as is reasonable under the circumstances of a case[,]" but punishment is excessive when it goes "beyond what is proper or reasonable." Dep't of Children & Families, Div. of Youth & Family Servs. v. K.A., 413 N.J. Super. 504, 510–11 (App. Div. 2010).

We reject defendant's claim that the physical contact between him and Tricia was no more than reasonable discipline imposed because of her marijuana use and talking back to her father. The judge found that defendant

> at . . . 12:30 to 1 in the morning . . . went to his daughter's aunt's house, no warning, no nothing and certainly no invitation, to intimidate his daughter to come to court with him the next morning to testify against her mother. That was the clear message she gave her aunt the next morning, that that was the purpose of his visit. And she said she did not want to testify on her mother.
>
> . . . .
>
> But [defendant] attempted to intimidate her . . . into doing that. And when she said . . . no . . . [defendant] resorted to physical force — physical violence.

Rejecting defendant's version of the physical contact between him and his daughter, the judge found that after Tricia refused to testify, defendant "grabbed her by the wrist, . . . slapped her in the face[,] and . . . grabbed the braids in the

A-0390-18T2

back of her head . . . and in some sort of fashion, she fell to the floor . . . and three braids were literally ripped out of her head." The judge found defendant committed "an assault" on his daughter.

We defer to the judge's credibility determinations and factual findings which are amply supported by the record as a whole. The judge categorically rejected the contention that defendant's "assault" was the result of his supposed discipline of Tricia, or that the physical harm defendant caused Tricia was so trivial as to fall short of the standard for abuse under Title Nine. See, e.g., N.J. Dep't of Children & Families, Div. of Youth & Family Servs. v. C.H., 414 N.J. Super. 472, 476 (App. Div. 2010) (affirming abuse finding where the injuries did not require any medical attention).

In N.J. Div. of Child Prot. & Permanency v. S.K., we held that "a Family Part [j]udge may not draw an adverse inference of culpability against a defendant who invokes his right against self-incrimination to refuse to testify at a Title 9 fact-finding hearing" when related criminal charges are pending. 456 N.J. Super. 245, 251, 271–72 (App. Div. 2018). Defendant argues that the judge here noted defendant's version of events as supplied to the Division's caseworker was uncorroborated, implicitly drawing an adverse inference because he exercised his Fifth Amendment rights.

However, in S.K. the trial court explicitly drew an adverse inference against the defendant when he refused to testify. Id. at 256–61. Here, the judge only indicated that Tricia's version of what happened was more credible because it was corroborated by Brenda's testimony, observations made of Tricia's scalp by Brenda and the Division's caseworker, and defendant's admission that he had, in fact, "mushed" his daughter's face.

We also find unpersuasive defendant's claim that the Division's summation comments urged the judge to draw an adverse inference based on defendant's silence at trial. A fair reading of the entire summation leads us to conclude the Deputy Attorney General's statement that defendant failed to rebut Tricia's version of the events was merely intended to persuade the court that the Division had met its burden of proof.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

10

A-0390-18T2