# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2934-18T4

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

D.S., J.W., and U.J.,

     Defendants,

and

H.J.,

     Defendant-Appellant.

_____

IN THE MATTER OF M.W. and
M.W., minors.

_____

Submitted September 16, 2020 – Decided September 28, 2020

Before Judges Fuentes and Firko.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FN-12-0209-17.

Joseph E. Krakora, Public Defender, attorney for appellant (Robyn A. Veasey, Deputy Public Defender, of counsel; Arthur David Malkin, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Shane Williams, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Meredith Alexis Pollack, of counsel; Sara A. Friedman, Designated Counsel, on the brief).

PER CURIAM

Defendant H.J. (Hank),[1] the paternal step-grandfather of two minor children, M.W. (Matt) born in January 2008, and M.W. (Mary), born in March 2009, appeals from a December 15, 2017 Family Part order finding he inflicted excessive corporal punishment on Matt by striking him with a belt and causing serious injuries within the meaning of N.J.S.A. 9:6-8.21(c)(4). Having reviewed the record, we conclude that the trial court's fact-finding decision was supported

---

[1] We use fictitious names for H.J., D.S., J.W., U.J., M.W., and M.W. to protect their privacy and for ease of reference. See R. 1:38-3(d)(12).

by sufficient credible evidence and is consistent with the applicable law. Therefore, we affirm.

I.

We discern the following facts from evidence adduced at the fact-finding hearing. On February 25, 2017, the Division of Child Protection and Permanency (Division) received a referral from St. Peter's Medical Center indicating Matt "ha[d] bruises on his back . . . legs, and arms" after allegedly being "hit with a belt" by Hank. The children were living with U.J. (Una), their paternal grandmother, and Hank because their biological mother, defendant D.S. (Danielle), was deceased and their father, defendant J.W. (Jason), was incarcerated.

Division caseworkers interviewed Matt and his maternal grandmother, V.B. (Violet), at the hospital. Violet informed the caseworkers that the children were at her home for a weekend visit and she noticed marks on Matt's back, arms, and legs. Matt told Violet that Hank "hit him about [four] times with the belt" because he "was supposed to bring his test scores home from school, didn't[,] and then lied to [Hank] about it . . . ." According to Matt, Hank told him to eat first and then remove his clothes so he could beat him. Violet showed the caseworkers and police officers cell phone photographs taken at her direction

by her older son depicting marks on Matt's body and . . . "several open wounds that [had] begun to heal."

Division caseworkers also interviewed Matt. He stated he "got a whoopin" from Hank with a "thick, black [belt] with a silver buckle," and it "hurt a little" but he "didn't cry." Matt reported he did not always feel safe at home because "he gets hit," and on a prior occasion, Hank punched him in the chest until Una told him to stop. Matt disclosed that he endured prior beatings by Hank. The Division caseworkers photographed Matt's injuries.

Later that day, Mary was interviewed by the Division caseworkers and explained when she is disciplined by Una and Hank, they tell her "don't do that" and she is given three chances before Una beats her with a belt. Mary was aware of Matt getting whipped with a belt when he gets in trouble, does poorly in school, and Una "gets a message from the teacher."

On February 26, 2017, the Division caseworkers went to Una and Hank's home to speak to them about the referral and the implementation of a safety protection plan. However, they denied using physical discipline on the children and refused to participate in the safety protection plan. Una told the Division that Matt "did not have bruises on his person when he left on Friday and therefore [the bruises] had to have happened at [Violet's] home." The Division

A-2934-18T4

conducted an emergency Dodd[2] removal of the children and placed them with Violet because Una and Hank would not implement a safety protection plan.

At the February 28, 2017 order to show cause (OTSC) hearing, Division caseworker, Minerva Munzon[3] testified about the photographs of Matt taken by Violet and pictures taken by her when she was with Matt at the hospital. The Family Part admitted all of the photographs into evidence and found "the information is reliable" based on Munzon's testimony that she saw the child the next day. The children were placed in the custody, care, and supervision of the Division. On May 1, 2017, during a case management conference, Hank withdrew his consent to undergo services for parental skills and anger management.

The Family Part conducted a fact-finding hearing over a period of six nonsequential days. The court heard testimony from Munzon and Victoria

---

[2] A "Dodd removal" refers to the emergency removal of a child from the home without a court order as authorized by N.J.S.A. 9:6-8.29 of the Dodd Act, N.J.S.A. 9:6-8.21 to -8.82.

[3] There are several variations of Minerva Munzon's name in the record. For the sake of clarity, we refer to her as "Munzon."

Toraddo,[4] a Division supervisor, Violet, Dr. Gladibel Medina, whom the Division called as an expert witness in the field of child abuse,[5] and Dr. Zhongxue Hua, whom Hank called as an expert witness in the field of forensic pathology.[6] Hank did not testify at the hearing. The Law Guardian did not call any witnesses.

At the conclusion of the hearing, the court found, by preponderance of the credible evidence, that Hank abused and neglected Matt by inflicting excessive corporal punishment in violation of N.J.S.A. 9:6-8.21(b)(4). In reaching this decision, the court determined Hank hit Matt, who was nine years old at the time, with a belt, resulting in serious injuries.

In reaching its decision, the court noted Matt's statements were "appropriately corroborated" and it considered the testimony of the caseworkers

---

[4] There are also several variations of Victoria Toraddo's name in the record. For the sake of clarity, we refer to her as "Toraddo."

[5] At the time she testified at the fact-finding hearing, Dr. Medina was the Medical Director for the Dorothy B. Hersh Child Protection Center at Saint Peter's University Hospital.

[6] The trial court admitted Dr. Hua as an expert witness in this case over the Division's objection based on his lack of specific training or experience working with children.

A-2934-18T4

and experts. The judge gave more weight to Dr. Medina's testimony, whose expertise in the field of child abuse was particularly relevant. The judge stated:

> First of all, although I believe Dr. Hua is an expert in his field of forensic pathology, I believe that Dr. Medina's field . . . the field of child abuse or neglect is really a narrower type of field and one that this court is actually trying to consider. But they're both experts in their fields.
>
> I think . . . one of the reasons the court gave more weight to Dr. Medina is she conducts numerous medical evaluations regarding abuse or neglect from birth to [eighteen]. She mentors residents in child abuse, pediatrics, and . . . has a very specialized knowledge in this area that I felt was very helpful to the court.
>
> . . . .
>
> Additionally, she said . . . the injuries were consistent with a belt. Now I realize what Dr. Hua's saying, and I tend to agree that having the belt would certainly help if we had a belt to be able to compare the two, but I cannot agree just common-sense-wise that if we did not have a belt . . . a finding couldn't be made that an injury is consistent with that.
>
> . . . .
>
> So, I do think that each of these reasons is the reason why the court gave Dr. Medina more weight and found her testimony to be more credible and, frankly, more useful to the court. Again, I don't fault Dr. Hua. He was not able to view the child, but I think viewing the child gave Dr. Medina, to me, . . . better evidence for her determination because she was able to see the

injuries, compare them, and look to the timing of the incident.

The court concluded that Hank struck Matt with a belt numerous times and "failed to exercise a minimum degree of care in that his actions showed a reckless disregard for the safety of this child, [Matt]." Further, the court found Hank used excessive force because he caused blood vessel trauma which resulted in permanent scarring, "bruising[,] and abrasions to the child." Since Matt was only nine years old, the court found his failure to bring home a test was a "minimal reason to strike a child." Although the matter focused on only one particular incident, the child indicated the whipping happened more than once. Ultimately, the judge found, by a preponderance of the evidence, that Hank abused and neglected Matt according to N.J.S.A. 9:6-8.21(c)(4) and that Una failed to protect Matt, resulting in her being substantiated under Title 30. See N.J.S.A. 30:4C-11 to -24.

On appeal, Hank challenges the sufficiency of the evidence supporting the court's finding that he inflicted excessive corporal punishment by using a belt on Matt and there was no expert testimony proffered at the OTSC hearing to support the court's conclusion. Hank also asserts that the entire proceeding was procedurally defective because the court erroneously made a finding at the OTSC hearing that Matt's injuries were inflicted by a belt when Hank had no

legal representation. We disagree and find there is sufficient credible evidence to support the court's finding and that there was no error in the admission of the challenged evidence and the proceedings comported with due process.

On November 2, 2018, Jason voluntarily surrendered his parental rights to Matt and Mary. On January 10, 2019, the court entered an order terminating the litigation and directed the Division to proceed with the children's adoption by Violet. A judgment of guardianship was entered on February 13, 2019. On March 12, 2019, Hank filed a notice of appeal.

## II.

As the reviewing court, we are bound to accept the trial court's factual findings so long as they are supported by sufficient credible evidence. N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448 (2012). Although we review legal conclusions by the trial judge de novo, we owe a particular deference to fact finding by family court judges because of their special expertise in family matters. Cesare v. Cesare, 154 N.J. 394, 413 (1998); Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). Consequently, we only disturb a family court's findings if they are "so wholly insupportable as to result in a denial of justice." In re Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993) (quoting Rova Farms Resort, Inc. v. Inv'rs

Ins. Co. of Am., 65 N.J. 474, 483-84 (1974)).  In light of these standards, we find no basis to disturb the trial court's findings of fact, and those findings support its legal conclusion.

As defined in Title 9, "abuse or neglect" may occur when a child's "physical, mental, or emotional condition has been impaired . . . as the result of" a parent who fails to "exercise a minimum degree of care . . . in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof, including the infliction of excessive corporal punishment . . . ."  N.J.S.A. 9:6-8.21(c)(4)(b).  A parent or guardian may fail to exercise the minimum degree of care if he or she "is aware of the dangers inherent in a situation and fails adequately to supervise the child or recklessly creates a risk of serious injury to that child."  G.S. v. Dep't of Human Servs., 157 N.J. 161, 181 (1999).  The Division must prove its allegations by a preponderance of the evidence at a fact-finding hearing. N.J.S.A. 9:6-8.46(b)(1).

Parental rights include the right to take reasonable measures in disciplining a child, including corporal punishment.  N.J. Div. of Youth & Family Servs. v. K.A., 413 N.J. Super. 504, 510 (App. Div. 2010) (citing State v. T.C., 347 N.J. Super. 219, 239-40 (App. Div. 2002)).  "A determination of

abuse must be shown by a preponderance of the evidence in a fact-finding hearing." K.A., 413 N.J. Super. at 510.

"Previous statements made by the child relating to any allegations of abuse or neglect" are admissible, and not considered hearsay, as long as they are not the sole basis for the court's finding of abuse or neglect. N.J.S.A. 9:6-8.46(a)(4). Proof of any injuries sustained by the child that are "of such a nature as would ordinarily not . . . exist except by reason of the acts or omissions of the parent or guardian" is prima facie evidence of abuse or neglect. N.J.S.A. 9:6-8.46(a)(2).

"Excessive corporal punishment" is not defined by statute but is determined on a case-by-case basis. K.A., 413 N.J. Super. at 511. In K.A., we noted "excessive corporal punishment" should be read in light of the term's common usage and understood meaning. Ibid. While the boundaries of what constitutes "excessive corporal punishment" are undefined in the statute, we have placed particular weight on the statute's inclusion of the word "excessive" and have stated that "[t]he term 'excessive' means going beyond what is proper or reasonable." Id. at 511. Thus, while "moderate correction" may be reasonable, "a single incident of violence against a child may be sufficient to constitute excessive corporal punishment." Id. at 510, 511.

11

Excessive corporal punishment may occur when "the child suffers a fracture of a limb, or a serious laceration, or any other event where medical intervention proves to be necessary . . . provided that the parent or caregiver could have foreseen, under all of the attendant circumstances, that such harm could result from the punishment inflicted." Id. at 511. The administrative code provides further guidance, listing injuries that may constitute abuse or neglect, including "[c]uts, bruises, abrasions, welts or oral injuries . . . ." N.J.A.C. 10:129-2.2(a)(9).

We noted that certain types of injuries inflicted by a parent or guardian may be considered per se excessive corporal punishment:

> A situation where the child suffers a fracture of a limb, or a serious laceration, or any other event where medical intervention proves to be necessary, may be sufficient to sustain a finding of excessive corporal punishment, provided that the parent or caregiver could have foreseen, under all of the attendant circumstances, that such harm could result from the punishment inflicted.
>
> [K.A., 413 N.J. Super. at 511-12.]

In K.A., we concluded that the defendant mother, who punched her eight-year-old autistic child approximately four to five times in the shoulder after the child failed to follow directions, had not inflicted excessive corporal punishment. Id. at 512. We particularly noted that the defendant's actions were

isolated and occurred during "the trying circumstances which [the defendant] was undergoing due to [the child's] psychological disorder." Id. at 512. Finally, the defendant showed remorse and took responsibility for her actions. Ibid. We also emphasized that

> [the defendant] was alone, without support from either her spouse/co-parent or from other members of her extended family, such as an experienced mother or aunt. Out of sheer frustration, or through an ill-advised impulse, she struck her child five times. These blows, though undoubtedly painful, did not cause the child any permanent harm, did not require medical intervention of any kind, and were not part of a pattern of abuse.
>
> [Ibid.]

In N.J. Div. of Youth and Family Servs. v. P.W.R., 205 N.J. 17, 36 (2011), the Supreme Court held that "[a] slap of the face of a teenager as a form of discipline—with no resulting bruising or marks—does not constitute 'excessive corporal punishment' within the meaning of N.J.S.A. 9:6-8.21(c)(4)(b)." In reaching this decision, the Court noted that "by qualifying the prohibition with the term, 'excessive,' the statutory language plainly recognizes the need for some parental autonomy in the child-rearing dynamic that, of necessity, may involve the need for punishment." Ibid.

However, in Dep't of Children & Families, Div. of Youth and Family Servs. v. C.H., 416 N.J. Super. 414, 416-17 (App. Div. 2010) we upheld a

finding of abuse and neglect against a defendant who struck her five-year-old child with a paddle as a means of punishing the child for making a harmless comment to a neighbor. Furthermore, the Division found the child had visible facial bruises and red marks approximately three to four inches in length, two-inch dark red scratches on her elbow and cheek, and a greenish mark on her back. Id. at 416. We also noted that the defendant did not appreciate the seriousness of these injuries nor exhibit any remorse for her conduct. Id. at 417.

Applying these principles in New Jersey Div. of Youth & Family Servs. v. S.H., 439 N.J. Super. 137, 140 (App. Div. 2015), we reversed the Family Part's judgment finding that the defendant parent had not abused her fifteen-year-old son when she was involved in a physical altercation with the child. The altercation "began with [her] throwing a shoe at him and progressed to hitting him with her hands, striking him with a golf club, and biting him on his shoulder." Id. at 140.

The Family Part found that the defendant's actions did not rise to the level of abuse because the parent's actions were reasonably triggered by her son's use of disrespectful, vulgar language. Id. at 143. We explained:

> While we do not condone the use of coarse or vulgar language by a child when directed at a parent, we find no evidence in the record that [the child's] denial of his mother's accusation, which included a passing

14

expletive, was intended to provoke [the defendant's] actions. Indeed, as the conflict escalated with [the defendant] throwing a shoe at [the child] he attempted to defuse it by leaving the room. It was [the defendant] who fueled the escalation by grabbing [the child] in an attempt to keep him in the room. The assault with the golf club and the biting followed.

[Id. at 148.]

We thus held that the defendant's actions were unreasonable and disproportionate to the child's conduct and constituted a form of excessive corporal punishment. Id. at 147-50. In reaching this conclusion we expressly distinguished the defendant's conduct from the "occasional slap" in P.W.R. and the comparatively minor injuries in K.A. Ibid.

In contrast, in New Jersey Div. of Youth & Family Servs. v. C.H., 414 N.J. Super. 472, 481 (App. Div. 2010), we upheld a finding of excessive corporal punishment noting "there is absolutely nothing reasonable about inflicting harm, in the form of paddling, upon a five-year-old child because the child told a neighbor that their home was without electricity." There, we considered the age of the child, the mother's regular use of corporal punishment, the form of punishment utilized, the injuries inflicted, and the reason for the discipline. Id. at 481-82. Moreover, we reached this conclusion notwithstanding of the fact

that the child, who had demarcations on her face and back, did not require medical attention. Id. at 476, 481-82.

We reject Hank's contention that the court's excessive corporal punishment finding is erroneous because the circumstances in the matter under review are more akin to K.A. and P.W.R. than C.H. Unlike in K.A. where we concluded the mother did not inflict excessive corporal punishment because her actions were isolated, under trying circumstances, and the child was unwilling to follow verbal instructions, here, the facts are distinguishable. The record shows this was not an isolated incident. Hank viewed repeatedly striking a nine-year-old child with a belt as a reasonable and appropriate method of parental discipline. Furthermore, while the mother in K.A. struck her daughter with her hand, Hank struck Matt with a belt on his bare torso, back, and extremities that left visible lashes on his body and caused multiple bruises, open wounds, and broken blood vessels. The court appropriately gave substantial weight to Dr. Medina's testimony, and that credibility determination is entitled to deference. N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 278 (2007).

Finally, for the first time in this appeal, Hank argues that the manner whereby the Family Part conducted the OTSC hearing reveals the judge reached a final conclusion about Hank's conduct before the fact-finding hearing. Since

16

this issue was not raised by Hank at either hearing, . . . "our review of this argument is guided by the plain error standard set forth in Rule 2:10-2." New Jersey Div. of Youth & Family Srvs. v. N.S., 412 N.J. Super. 593, 622 (App. Div. 2010).  Under the plain error standard, "[t]he mere possibility of error is insufficient for reversal."  Ibid.  Instead, we must determine whether, in the interests of justice, the alleged error had the "clear capacity for producing an unjust result."  Ibid. (quoting Tartaglia v. UBS PaineWebber, Inc., 197 N.J. 81, 128 (2008)).  In this light, this argument lacks sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

17