# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3877-19

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

      Plaintiff-Respondent,

v.

R.W.,

      Defendant-Appellant,

and

T.R. and N.W.,

      Defendants.

_____

IN THE MATTER OF N.W.
and N.W., minors.

_____

Submitted June 7, 2021 – Decided July 12, 2021

Before Judges Rothstadt and Susswein.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FN-07-0118-19.

Joseph E. Krakora, Public Defender, attorney for appellant (Kevin G. Byrnes, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Vonnetta C. Dixon, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (David Valentin, Assistant Deputy Public Defender, on the brief).

PER CURIAM

In this Title Nine action,[1] defendant R.W., the father of a daughter, N.W.[2] who was born in 2003, appeals from the Family Part's February 19, 2019 order that was entered after the trial judge, Nora J. Grimbergen, conducted a two-day factfinding hearing, N.J.S.A. 9:6-8.44. The trial judge concluded that defendant abused or neglected his child by inflicting excessive corporal punishment, as contemplated by N.J.S.A. 9.6-8.21. On appeal, defendant contends that the

---

[1] N.J.S.A. 9:6-8.21 to -8.73. Title Nine is designed to protect children who suffer "serious injury inflicted by other than accidental means." G.S. v. Dep't of Hum. Servs., 157 N.J. 161, 171 (1999) (quoting N.J.S.A. 9:6-8.8).

[2] We identify defendant, his child, and the other parties by initials to protect confidential information in the record. R. 1:38-3(d)(12).

judge's conclusion was unsupported by the evidence because although he intentionally employed corporal punishment, his daughter's injuries were accidental. He also argues that the judge improperly admitted into evidence an expert's opinion that addressed the ultimate issue in this case. Plaintiff, the New Jersey Division of Child Placement and Permanency (Division), and N.W.'s Law Guardian urge us to affirm.

We conclude Judge Grimbergen correctly determined that N.W. was an abused or neglected child under Title Nine. We affirm substantially for the reasons stated by the judge in her oral decision placed on the record the same date she entered the challenged order.

The facts derived from the record are summarized as follows. The Division's first contact with the family occurred on June 4, 2017, after the police found N.W. at 5:00 a.m., wandering the streets barefoot, approximately five miles from her home. N.W. informed the officers that she had left her home because she was "scared for her life." According to N.W., defendant was upset because she had stayed up all night. She explained that in response to defendant bursting open her bedroom door, she left the house "because she knew he would beat her."

The police took N.W. to the station and called defendant who told them they "can keep her" and that he "could [not] care less about picking up his daughter." The police referred the matter to the Division, which sent Special Response Unit (SPRU) workers to speak to N.W. and to defendant.

N.W. told SPRU workers that defendant had previously beaten her with a broom "when she wore shorts to school with holes in them that showed her skin." The SPRU workers brought N.W. home and told defendant that "he [could not] use corporal punishment, excess[ive] force[,] or use objects." Defendant stated that "he [would] not punch [N.W.] with his fist but he [would] use whatever he sees fit to beat her." After several more admonishments from the SPRU workers, defendant "agreed he would not beat [N.W.]," although she would instead be "put on punishment."

On October 2, 2018, the Division received another referral, this time from a social worker at a hospital, who had observed N.W. come in with her paternal grandmother for medical treatment. N.W. had "bruises and lacerations on both arms and on her butt[ocks]." In an ensuing conversation between investigating Division workers and defendant, he stated that a family friend had overheard N.W. discussing over the phone with a friend times that she had smoked

4

marijuana and had been touched sexually, which led defendant to disciplining N.W. for her illicit drug use and failure to report the sexual abuse.[3]

The disciplinary measure used by defendant consisted of defendant directing N.W. and the other household members[4] to the living room to observe as he beat N.W. on the buttocks fifteen times with an aluminum curtain rod, once for each year of her then-current age. As defendant attempted to inflict that punishment, N.W. protested throughout and tried to block the blows with her hands and arms. Partway through the beating, the rod broke, but defendant continued to beat N.W. with the broken rod despite the rod's now jagged edges.

After the beating, N.W. was taken by her paternal grandmother to the hospital, where she was treated for multiple bruises and lacerations to her buttocks and arms. N.W. required ten stitches or sutures to her right forearm.

In response to the hospital's referral, a Division case worker spoke to defendant who attempted to justify his actions and showed no remorse. Defendant claimed he did not know N.W. was bleeding as a result of the beating, and that he found out about it only through the SPRU workers who followed up

---

[3] During her psychosocial evaluation, N.W. denied any history of sexual abuse.

[4] At the time, the household consisted of defendant, N.W.'s stepmother, N.W.'s half-brother, and N.W.

A-3877-19

at his home later that night.  According to N.W., defendant was aware she was bleeding "because he told her to clean up the blood from the pillows and the shirt prior to him leaving."

After this incident, N.W. began residing with her paternal grandmother. Defendant did not oppose this arrangement and agreed to a Safety Protection Plan until the matter was resolved.

The Division filed its complaint on October 9, 2018, based on the events of October 2, 2018.  Judge Grimbergen held a two-day factfinding hearing, where the Division's investigator and its expert, Dr. Shaina Groisberg, whom all parties stipulated was qualified as a pediatric specialist in the field of child abuse and neglect, testified on behalf of the Division.  Photographs of N.W.'s injuries were also admitted into evidence.  Defendant did not present any evidence. After considering counsels' closing arguments, Judge Grimbergen concluded that N.W. was an abused or neglected child under N.J.S.A. 9:6-8.21, as a result of defendant's excessive corporal punishment.  This appeal followed.

Our review of a family court judge's abuse or neglect finding is limited. N.J. Div. of Youth & Fam. Servs. v. S.H., 439 N.J. Super. 137, 144 (App. Div. 2015).  We must determine whether the decision "is supported by 'substantial and credible evidence.'"  N.J. Div. of Youth & Fam. Servs. v. F.M., 211 N.J.

420, 448 (2012) (quoting N.J. Div. of Youth & Fam. Servs. v. M.M., 189 N.J. 261, 279 (2007)). We defer to the Family Part's factual findings because it has "the superior ability to gauge the credibility of the witnesses . . . and because it possesses special expertise in matters related to the family." Ibid. A family judge's decision should not be overturned unless it went "so 'wide of the mark'" that reversal is needed "to correct an injustice." Ibid. (quoting N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008)). However, the judge's interpretation of the law or her legal conclusions are reviewed de novo. State in the Interest of A.B., 219 N.J. 542, 554-55 (2014); Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

"The purpose animating Title Nine 'is to provide for the protection of children . . . who have had serious injury inflicted upon them.'" N.J. Div. of Youth & Fam. Servs. v. P.W.R., 205 N.J. 17, 31 (2011) (quoting N.J.S.A. 9:6-8.8(a)). Under N.J.S.A. 9:6-8.21(c), an abused or neglected child is

> a child less than [eighteen] years of age whose parent . . . (2) creates or allows to be created a substantial or ongoing risk of physical injury to such child by other than accidental means which would be likely to cause death or serious or protracted disfigurement, or protracted loss or impairment of the function of any bodily organ; (3) commits or allows to be committed an act of sexual abuse against the child; (4) or a child whose physical, mental, or emotional condition has been impaired or is in imminent danger

of becoming impaired as the result of the failure of his parent . . . to exercise a minimum degree of care . . . (b) in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof, <u>including the infliction of excessive corporal punishment</u>; or by any other acts of a similarly serious nature requiring the aid of the court. . . .

(Emphasis added).

The Division "must prove that the child is 'abused or neglected' by a preponderance of the evidence, and only through the admission of 'competent, material and relevant evidence.'" <u>P.W.R.</u>, 205 N.J. at 32 (quoting N.J.S.A. 9:6-8.46(b)). Each case of alleged abuse "requires careful, individual scrutiny" and is "generally fact sensitive." <u>Id.</u> at 33. The proofs must be evaluated based on the totality of the circumstances "because the evidence can be synergistically related." <u>Id.</u> at 39. As a general matter, the determination of whether a child has been abused or neglected "is a conclusion of law to which we are not required to defer." <u>N.J. Div. of Youth & Fam. Servs. v. A.R.</u>, 419 N.J. Super. 538, 543 (App. Div. 2011).

Applying that standard, we conclude defendants' arguments are without merit. Judge Grimbergen determined that N.W. was an abused and neglected child, N.J.S.A. 9.6-8.21(c), and her finding was supported by substantial and credible evidence in the record, primarily through defendant's admissions and

the photographs of N.W.'s injuries. The evidence established that, in the context of an argument over N.W.'s behavior, defendant employed impermissible, excessive corporal punishment.

For the purposes of our child neglect statute, a parent or guardian "fails to exercise a minimum degree of care when he or she is aware of the dangers inherent in a situation . . . or recklessly creates a risk of serious injury to that child." G.S., 157 N.J. at 181. The burden is on the Division to prove by a preponderance of the evidence at a factfinding hearing that the subject child is being abused or neglected. See N.J.S.A. 9:6-8.44. Proof of a parent's intent to harm a child is not required. G.S., 157 N.J. at 179-80.

Failure to exercise a minimum degree of care includes "the infliction of excessive corporal punishment." N.J.S.A. 9:6-8.21(c)(4). Although "[c]orporal punishment" is not prohibited, and "a parent may inflict moderate correction such as is reasonable under the circumstances of a case," Title Nine prohibits "excessive corporal punishment," which is not defined by the statute. N.J. Div. of Youth & Fam. Servs. v. K.A., 413 N.J. Super. 504, 510 (App. Div. 2010). Our case law has come to define "excessive" as "beyond what is proper or reasonable." Id. at 511. Punishment will be considered excessive where a parent's intentional act exposes a child to the substantial probability that injury

would result from the parent's conduct. N.J. Div. of Youth & Fam. Servs. v. M.C. III, 201 N.J. 328, 345 (2010). This determination must focus on the harm caused to the child, not the parent's intent. M.C. III, 201 N.J. at 344; K.A., 413 N.J. Super. at 511. Although a parent who engages in corporal punishment may not intend the actual harm suffered by the child, abuse or neglect will be found where the parent acted intentionally and "disregarded the substantial probability that injury would result from his conduct." M.C. III, 201 N.J. at 345.

In determining whether corporal punishment is proper or reasonable, careful consideration must be given to the "nature and extent of the injuries" and the "instrumentalities used to inflict them." S.H., 439 N.J. Super. at 146. Courts also will consider "(1) the reasons underlying [the defendant's] action; (2) the isolation of the incident; and (3) the trying circumstances under which [the defendant] was undergoing . . . ." K.A., 413 N.J. Super. at 512. Age is an additional consideration, and the court will "not assume that what may be 'excessive' corporal punishment for a younger child must also constitute unreasonable infliction of harm, or excessive corporal punishment in another setting involving an older child." P.W.R., 205 N.J. at 33. Finally, courts will consider whether the defendant recognized his or her error, was remorseful, and was open to receiving help. See S.H., 439 N.J. Super. at 147-48.

10

We have previously observed the following about excessive corporal punishment:

> [E]xcessive corporal punishment was found where a mother used a belt to hit her six-year-old son and left visible welts. [N.J. Div. of Youth & Fam. Servs. v. B.H., 391 N.J. Super. 322, 340, (App. Div. 2007)]. Similarly, a mother inflicted excessive corporal punishment by beating her daughter with a paddle in the face, arms, and legs. [N.J. Div. of Youth & Fam. Servs. v. C.H., 414 N.J. Super. 472, 476 (App. Div. 2010)]. In both B.H. and C.H., our conclusions were based on the use of an instrument to hit the child with such force that visible marks were left, the unreasonable and disproportionate parental response, and the fact that the incidents were not isolated but part of a pattern of physical punishment. [See B.H., 391 N.J. Super. at 338-40; C.H., 414 N.J. Super. at 481].
>
> [Id. at 146-47.]

See also P.W.R., 205 N.J. at 36 (finding that "[a] slap of the face of a teenager as a form of discipline—with no resulting bruising or marks—does not constitute excessive corporal punishment").

Applying these principles, we conclude that striking a child with an aluminum rod, broomstick, pipe, or similar weapon—even once—causing bruises or welts, or significant wounds that require stitches, in response to a disagreement over unacceptable behavior, or any similar prompting, is excessive corporal punishment supporting a finding of abuse and neglect. Injuries

11

sustained during the use of such weapons against children are foreseeable, K.A., 413 N.J. Super at 511, absent unusual circumstances, and a parent's lack of intent to cause foreseeable injuries is of no moment. Any arguments to the contrary by defendant are without sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3877-19