# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0452-23

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

H.A.,[1]

     Defendant,

and

T.S.,

     Defendant-Appellant.

_____

IN THE MATTER OF S.S.,
S.S., S.S., H.S., S.S., and
M.A., minors.

_____

Submitted October 16, 2024 – Decided October 28, 2024

---

[1] We use initials and pseudonyms to protect the identities of the children and parties and to preserve the confidentiality of these proceedings. R. 1:38-3(d)(12).

Before Judges Gilson and Firko.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Passaic County, Docket No. FN-16-0079-23.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Adrienne Kalosieh, Assistant Deputy Public Defender, of counsel and on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent (Janet Greenberg Cohen, Assistant Attorney General, of counsel; Renee Greenberg, Deputy Attorney General, on the brief).

PER CURIAM

Defendant T.S. (Theo) appeals from a June 30, 2023 Family Part order determining that he abused or neglected his then ten-year-old son S.S. (Sean) by hitting him multiple times with a belt and causing serious injuries, within the meaning of Title 9, N.J.S.A. 9:6-8.21(c)(4)(b). The Law Guardian seeks affirmance. Having reviewed the record, we conclude that the judge's fact-finding decision was supported by sufficient credible evidence and is consistent with the applicable law. Therefore, we affirm the order.[2]

I.

---

[2] Defendant H.A. (Helen) was dismissed from the matter prior to the fact-finding hearing with no findings made against her. H.A. is not a party to this appeal.

2

A-0452-23

We discern the following facts from evidence adduced at the fact-finding hearing. Theo and Helen are the biological parents of five children: S.S. (Sage); Sean; S.S (Susie); H.S. (Hunter); and S.S. (Sofia). Helen is also the biological mother of M.A. (Michael). Theo is Michael's stepfather. On June 8, 2022, the Division of Child Protection and Permanency (the Division) received a referral expressing concern Theo had beaten Sean earlier that day, and Sean had bruises all over his back, legs, and buttocks. The referent knew the family and was told by "the oldest" child that Theo beat Sean and noted domestic violence concerns between Theo and Helen. That night, a Division Special Response Unit worker, Krystal Royal, visited the family's home with a co-worker.

Theo was working as an Uber driver that evening, and Helen was home with the six children. Helen would not open the door. When the Division workers returned at 2:00 a.m., Royal discussed the allegations with Helen, who denied there was any physical abuse or domestic violence in the home. Royal requested to speak with Sean, who was sleeping but awakened to be interviewed. Sean denied being physically disciplined by Theo with a belt. However, Royal observed bruises and marks on Sean's back and arms and photographed his injuries. Sean claimed he was bruised because he fell. At first, Sean stated he fell down in the house. He then changed his story and claimed he fell down at

school, but there were no witnesses.  Helen also denied the allegations and did not seek medical treatment for Sean because he was not in pain.

Royal interviewed then seven-year-old Hunter who said, "[Sean] had gotten hit with a belt because [Sean] had punched their little sister [Susie].  Theo got upset and hit [Sean] in the living room because he was in the living room with Sean when Theo came with the belt to hit [Sean]."  Hunter added that Theo does not use physical punishment on him and has only hit Sean with an open hand in the past.

Royal also interviewed Susie, who explained that Theo hit Sean because she had been playing a game with Sean, and he hit her too hard.  Susie said Theo got upset and hit Sean with a belt.  Susie mentioned that was the first time Theo hit anyone with a belt and that he "usually yells."  Susie denied any of the other children were physically disciplined.  Royal also interviewed Michael; he denied witnessing any physical abuse and noted he had a "nonexistent" relationship with Theo.  Sofia was not awakened, and Sage declined to be interviewed at that time.

While Royal was interviewing the children, Theo returned home from work in the early morning hours, around 5:25 a.m.  Royal discussed the allegations with Theo and showed him photographs of Sean's injuries.  Theo

responded that "he is not a bad parent" and "immediately admitted to hitting [Sean] with a belt because [Sean] was hitting [Susie] and had been disrespectful by sticking up his middle finger at [Theo]." According to Theo, "he lost control[,] and his intent was not to hurt . . . [Sean.]" Theo explained "what he did was accidental[,] and [he] would never do it again."

Theo agreed to meet with the Passaic County Prosecutor's Office and comply with the Division's safety protection plan, which required him to leave the home. Theo left that evening and stayed with the children's uncle, who agreed to be part of the safety protection plan. Helen also agreed to immediately take Sean to the emergency room for a medical evaluation.

On June 9, 2022, Sean was evaluated at a hospital emergency room. The Division received a related referral from hospital staff, expressing concerns for Sean. The hospital staff reported that Helen told staff Sean's visible "injuries and bruising" were the result of playing with his siblings and hitting himself with a belt. Helen claimed that Theo tried to intervene but ended up hitting Sean once with the belt, causing him to fall down the stairs.

The hospital's referral to the Division indicated that Sean had "multiple linear bruises and welts on his back"; "one vertical and very pronounced mark over his spine, one large hematoma on the right flank area, and two linear marks

5

on his right arm over his elbow." The hospital report noted that the bruises ranged in color and Sean felt "pain to the touch."

The next day, June 10, 2022, Division intake worker Crismely Moya followed up with the family at the home and met with the children privately. Sean told Moya that Helen took him to the doctor because he had been hit by a belt, but was not in pain, and not afraid of Theo or anyone in the home. Moya interviewed Sage for the first time. On the day of the incident, Sage reported that she arrived home from school and witnessed Sean and Susie arguing. Sage also reported that Theo called for Sean and then she observed Theo hitting Sean with a belt. Sage recalled hearing Helen attempt to stop Theo from hitting Sean, but to no avail.

Moya also interviewed four-year-old Sofia, but she denied knowing anything about the incident. Sofia said that she has never been hit by a belt or seen her brothers get hit by a belt. Sofia denied knowing anything about the incident involving Sean.

Moya also met with Helen. Helen asserted that Theo had never physically disciplined the children before and that this was a "one[-]time" incident. Helen reported trying to intervene as Theo was hitting Sean with the belt, but she was unable to stop him. Helen told Moya she had never seen Theo as upset as he

6

was that evening, and that he had just returned from a long shift as an Uber driver.

Theo was remorseful during his interview and reported that he was willing to do whatever the Division asked to return to his family. After working an eighteen-hour shift, Theo reported arriving home to "chaos," indicated the children were not getting along and running around all over the house. Theo tried to rest, but Susie came to him crying and complaining about Sean because he had been "hitting" and "bothering" her. Theo reported that Sean had been given "verbal warnings" about his recent defiant behavior, and Theo used a "twenty-five" inch belt to discipline him.

Theo "left the home to cool down" after realizing how badly he disciplined Sean. Theo felt he "overreacted" and "took out his frustration" on Sean, causing more injury than intended. Theo claimed this was the first time he ever physically disciplined Sean, and Theo "regrett[ed] his actions."

On June 14, 2022, Sean was evaluated again at the hospital. The clinical team at the hospital's Child Protection and Safety Center (the Center) interviewed Sean and Helen separately. Both of them continued to give "conflicting and inconsistent histories" about how Sean's injuries were sustained, with Sean telling Dr. Emilola Ogunbameru, a pediatric emergency

7

medicine doctor, that the injuries were "self-inflicted." Following her examination of Sean, Dr. Ogunbameru and the team at the Center concluded that the "location and severity of the bruising [was] not consistent with self-inflicted injuries."

The Division obtained collateral reports from the children's schools. All were reported to have good attendance and grades and had no behavioral problems. The home was found to be safe and background checks were performed on family members who were part of the safety protection plan. There were no allegations of alcohol or substance abuse.

On June 16, 2022, Theo made an unannounced visit to the Division's office. He again admitted to "losing control" and using a belt to discipline Sean. Theo described the belt as being "brown in color" and "approximately twenty-five inches in length." Theo denied physically disciplining any of the children in the past. Following its investigation, the Division determined that physical abuse was "established" as defined in N.J.S.A. 3A:10-7.3, and Sean was an abused or neglected child, as defined in N.J.S.A. 9:6-8.21.

After concluding its investigation, on September 19, 2022, the Division filed an order to show cause (OTSC) and verified complaint seeking care and supervision of the children under N.J.S.A. 9:6-8.21 and 30:4C-12. At the OTSC

hearing, the judge granted the Division's request to remove Theo from the home and ordered liberal, supervised contact with a family member. Theo was also permitted to have phone, text, and social media communication with the children as long as it was supervised.

On October 17, 2022, the Division maintained its intention was to ultimately return Theo to the home with education about physical discipline. However, the Division noted care and supervision was necessary based on the hospital staff's concern, who reported "a weird dynamic" with the family. On December 19, 2022, the children underwent psychosocial evaluations at the Audrey Hepburn Children's House.

Theo actively engaged in anger management services with an in-home parenting coach. Sean underwent individual therapy. The other children had family therapy with a family therapist. Theo was permitted to return to the family home, with Helen supervising his contact with the children. Theo and Helen were awarded joint legal custody of the children, including Sean. The Law Guardian reported after Theo's return that "all the children were happy to have their father back in the home," and "things were going well."

On February 23 and June 14, 2023, the judge conducted a fact-finding hearing. The judge heard testimony from Royal and Moya. Dr. Ogunbameru

A-0452-23

was called as an expert witness. The doctor testified that Sean's explanation that he hit himself with a belt after arguing with his sister did not correlate to the injuries she observed, stating, "It didn't seem plausible that he was able to hit himself in the back." Dr. Ogunbameru rejected Sean's representation that he fell down the stairs and that Theo "accidently hit him" because the pattern and severity of the injuries, which were primarily on Sean's back, could not have been self-inflicted. Dr. Ogunbameru testified that Sean's injuries were "not life threatening," and he was discharged without further medical recommendations.

The Law Guardian took no position and did not provide any evidence or testimony. Theo did not testify and did not call any witnesses or produce any evidence.

At the conclusion of the hearing, the judge reserved decision. On June 30, 2023, in an oral decision, the judge found, by a preponderance of the credible evidence, that Theo abused and neglected Sean in violation of N.J.S.A. 9:6-8.21(c) by inflicting excessive corporal punishment. The judge acknowledged Theo had no history with the Division; that he cooperated with services; and was ultimately reunited with Sean and the other children at the family's home during the intervening hearings. The judge, however, highlighted that the photographs

10

admitted into evidence depicted "multiple strikes" on Sean's back from the "use of a belt, some instrumentality."

The judge found Royal's testimony "credible" and "inherently believable" as she provided "straight answers in detailed testimony" and "did not avoid questions on cross-examination." The judge also determined Moya's testimony was "credible" and "believable," noting she reasonably "made admissions on cross even when those answers did not support the Division's case." The judge recounted Dr. Ogunbameru's testimony, specifically her description of Sean's injuries and her opinion that his injuries could not have been self-inflicted.

The judge distinguished the matter under review from the parent in N.J. Div. of Youth & Fam. Servs. v. K.A., where we held small bruises caused by a mother striking her eight-year-old autistic daughter repeatedly on the shoulder was not found to be abuse because it was a "one-time," "ill-advised impulse," which was born "out of sheer frustration," "did not cause permanent harm," "did not require medical attention of any kind," and was "not part of a pattern of abuse." 413 N.J. Super. 504, 512 (App. Div. 2010). A memorializing order was entered that day. On August 28, 2023, an order terminating the litigation was entered.

On appeal, Theo challenges the sufficiency of the evidence supporting the judge's findings. Theo argues: (1) the Division failed to prove by a preponderance of the evidence that he was excessive in disciplining Sean, resulting in physical impairment under N.J.S.A. 8:6-8.21(c)(1); (2) the judge erred by concluding the one-time use of a belt in disciplining then ten-year-old Sean for hitting his little sister and being disrespectful after verbal warnings, resulting in bruising, was unlawful "excessive punishment" under N.J.S.A. 9:6-8.21(c)(4)(b); and (3) while not commendable, Theo's conduct did not cause Sean to suffer a physical injury that created a substantial risk of death, or serious or protracted impairment, disfigurement, or protracted impairment of physical or emotional health, or protracted loss or impairment of the function of any bodily organ from the physical discipline to declare him an abused child as defined by N.J.S.A. 8:6-8.21(c). For the reasons that follow, we disagree and affirm.

## II.

"Title 9 governs acts of abuse and neglect against a child" by providing "interim relief for children at risk and outlines the standards for abuse and neglect proceedings against parents and guardians." N.J. Div. of Youth & Fam. Servs. v. A.L., 213 N.J. 1, 18 (2013).

12

"In Title [9] proceedings, the Division has the burden of proving by a preponderance of competent, material, and relevant evidence that a parent abused or neglected a child." N.J. Div. of Child Prot. & Permanency v. B.P., 257 N.J. 361, 375 (2024). The Division "need only show that it was more likely than not that the defendant abused or neglected the child." N.J. Div. of Child Prot. & Permanency v. B.O., 438 N.J. Super. 373, 380 (App. Div. 2014).

Appellate review of a trial court's finding of abuse or neglect is "limited" and "should be upheld when supported by adequate, substantial, and credible evidence." N.J. Div. of Youth & Fam. Servs. v. R.G., 217 N.J. 527, 552 (2014). Such deference is owed because the trial court "has the opportunity to make first-hand credibility judgments about the witnesses who appear on the stand; it has a 'feel of the case' that can never be realized by a review of the cold record." N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008) (quoting N.J. Div. of Youth & Fam. Servs. v. M.M., 189 N.J. 261, 293 (2007)).

"Moreover, by virtue of its specific jurisdiction, the Family Part 'possess[es] special expertise in the field of domestic relations' and thus 'appellate courts should accord deference to [F]amily [Part] factfinding.'" R.G., 217 N.J. at 553 (alterations in original) (quoting Cesare v. Cesare, 154 N.J. 394, 412-13 (1998)). "Therefore, '[w]e will not overturn a family court's factfindings

unless they are so "wide of the mark" that our intervention is necessary to correct an injustice.'" B.P., 257 N.J. at 375 (quoting N.J. Div. of Youth & Fam. Servs. v. F.M., 211 N.J. 420, 448 (2012)).

We also recognize, however, that "where the focus of the [appeal] is . . . alleged error in the trial judge's evaluation of the underlying facts and the implications to be drawn therefrom, the traditional scope of review is expanded." R.G., 217 N.J. at 552 (quoting In re Guardianship of J.T., 269 N.J. Super. 172, 188-89 (App. Div. 1993)). No deference is owed to a "trial court's interpretation of the law and the legal consequences that flow from established facts." Manalapan Realty v. Manalapan Twp. Comm., 140 N.J. 366, 378 (1995). Our review of the trial judge's legal conclusions is de novo. N.J. Div. of Youth & Fam. Servs. v. A.B., 231 N.J. 354, 369 (2017).

As defined in Title 9, "abuse or neglect" may occur when a child's "physical, mental, or emotional condition has been impaired . . . as the result of" a parent who fails "to exercise a minimum degree of care . . . in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof, including the infliction of excessive corporal punishment." N.J.S.A. 9:6-8.21(c)(4)(b). A parent or guardian may fail to exercise the minimum degree of care if "he or she is aware

of the dangers inherent in a situation and fails adequately to supervise the child or recklessly creates a risk of serious injury to that child." G.S. v. Dep't of Hum. Servs., 157 N.J. 161, 181 (1999) (citation omitted).

Parental rights include the right to take reasonable measures in disciplining a child, including corporal punishment. K.A., 413 N.J. Super. at 510 (quoting State v. T.C., 347 N.J. Super. 219, 239-40 (App. Div. 2002)).

"[P]revious statements made by the child relating to any allegations of abuse or neglect" are admissible, and not considered hearsay, as long as they are not the sole basis for the court's finding of abuse or neglect. N.J.S.A. 9:6-8.46(a)(4); see also N.J. Div. of Child Prot. & Perm. v. S.K., 456 N.J. Super. 245, 272 (App. Div. 2018). Proof of any injuries sustained by the child that are "of such a nature as would ordinarily not . . . exist except by reason of the acts or omissions of the parent or guardian" is prima facie evidence of abuse or neglect. N.J.S.A. 9:6-8.46(a)(2). However, "[a] child's statement need only be corroborated by '[s]ome direct or circumstantial evidence beyond the child's statement itself.'" N.J. Div. of Child. Prot. & Perm. v. A.D., 455 N.J. Super. 144, 157 (App. Div. 2018) (second alteration in original) (quoting N.J. Div. of Child Prot. & Perm. v. N.B., 452 N.J. 513, 522 (2017)).

15

"'Excessive corporal punishment' is not defined by statute but is determined on a case-by-case basis." N.J. Div. of Youth & Fam. Servs. v. S.H., 439 N.J. Super. 137, 145 (App. Div. 2015) (citing K.A., 413 N.J. Super. at 511). In K.A., we noted "excessive corporal punishment" should be read in light of the term's common usage and understood meaning. Id. at 511. While the boundaries of what constitutes "excessive corporal punishment" are undefined in the statute, we have placed particular weight on the statute's inclusion of the word "excessive" and have stated that "[t]he term 'excessive' means going beyond what is proper or reasonable." Ibid. Thus, while "moderate correction" may be reasonable, "a single incident of violence against a child may be sufficient to constitute excessive corporal punishment." Id. at 510-11.

Excessive corporal punishment may occur when "the child suffers a fracture of a limb, or a serious laceration, or any other event where medical intervention proves to be necessary . . . provided that the parent or caregiver could have foreseen, under all of the attendant circumstances, that such harm could result from the punishment inflicted." Id. at 511 (citation omitted). The Administrative Code provides further guidance, listing injuries that may constitute abuse or neglect, including "[c]uts, bruises, abrasions, welts or oral injuries." N.J.A.C. 3A:10-2.2(a)(9).

A-0452-23

As stated in K.A., the defendant mother, who punched her eight-year-old autistic child approximately four to five times in the shoulder after the child failed to follow directions, was found to not have inflicted excessive corporal punishment. Id. at 506, 512. There, the defendant's actions were isolated and occurred during "the trying circumstances which [the defendant] was undergoing due to [the child]'s psychological disorder." Id. at 512. Finally, the defendant showed remorse and took responsibility for her actions. Ibid. We also emphasized that

> [the defendant] was alone, without support from either her spouse/co-parent or from other members of her extended family, such as an experienced mother or aunt. Out of sheer frustration, or through an ill-advised impulse, she struck her child five times. These blows, though undoubtedly painful, did not cause the child any permanent harm, did not require medical intervention of any kind, and were not part of a pattern of abuse.
>
> [Ibid.]

In light of these standards, we find no basis to disturb the judge's findings of fact, and those findings support his legal conclusion.

Theo asserts the record lacks evidence establishing his conduct constituted abuse and neglect under N.J.S.A. 8:6-8.21(c)(1) and 4(b)(1) because the Division failed to prove by a preponderance of the evidence that he was excessive in disciplining Sean, resulting in physical impairment. Theo

17

maintains the facts are "undisputed" that he admitted losing control "one time" and struck Sean with a belt "before walking away to calm down." According to Theo, the Division's evidence failed to show that the "type of bruising caused by traditional corporal punishment," which he claims was "using a belt on the backside of a ten-year-old boy," was ever likely to result in "death," or in "serious or protracted disfigurement," or in "protracted loss or impairment of the function of any bodily organ," under N.J.S.A. 9:6-8.21(c)(1).

Here, the judge rejected Theo's contention and properly distinguished his conduct from the defendant mother's conduct in K.A. "primarily due to the nature and extent of the injuries to [Sean] and the instrumentalities used to inflict them." (emphasis added). The judge emphasized there was "no weapon used to implement the punishment in K.A." Rather, the judge focused the facts in this case were more akin to those in N.J. Div. of Youth & Fam. Servs. v. B.H., 391 N.J. Super. 322, 340 (App. Div 2007) and N.J. Div. of Youth & Fam. Servs. v. C.H., 414 N.J. Super. 472, 476 (App. Div. 2010), cases where a parent used an instrumentality on a child and caused injury.

In B.H., excessive corporal punishment was found where a mother used a belt to hit her six-year-old son and left visible welts. B.H., 391 N.J. Super. at 340. In C.H., corporal punishment was found where a mother beat her daughter

with a paddle in the face, arms, and legs. <u>C.H.</u>, 414 N.J. Super. at 476. In comparison, especially to <u>B.H.</u>, Theo used a belt when he hit Sean and caused visible bruising on Sean's left leg, right lower back, right hip, right upper chest, and right upper arm. Thus, here the judge properly found similarities to <u>B.H.</u> and <u>C.H.</u>, where using an instrumentality in disciplining a child and causing visible injuries constituted abuse, than to <u>K.A.</u>, where there was no instrumentality used.

As to the extent of Sean's injuries, Dr. Ogunbameru confirmed that Sean's marks would not lead to "a substantial risk of death," "permanent disfigurement," or "protracted loss or impairment of the function of any bodily member or organ," that the injury was "superficial," would not last in the "long-term," and no treatment was needed. Theo's argument that these injuries fail to qualify for abuse is conflated because he misrepresents N.J.S.A. 9:6-8.21(c) by focusing only on subsection (c)(1) without considering subsection (c)(2). N.J.S.A. 9:6-8.21(c)(1) to (2) reads:

> "Abused or neglected child" means a child less than [eighteen] years of age whose parent or guardian, as herein defined, (1) inflicts or allows to be inflicted upon such child physical injury by other than accidental means which causes or creates a <u>substantial risk of death</u>, or serious or protracted disfigurement, or protracted impairment of physical or emotional health or protracted loss or impairment of the function of any

bodily organ; (2) creates or allows to be created a <u>substantial or ongoing risk of physical injury</u> to such child by other than accidental means which would be <u>likely to cause death or serious or protracted disfigurement, or protracted loss or impairment of the function of any bodily organ</u> . . . .

[(emphasis added).]

Under subsection (c)(1), Theo is correct that there is no abuse because Sean's injury did not rise to such a level of severity. But relevant here is the definition for abuse under subsection (c)(2): Theo created a substantial risk of physical injury to Sean by using an instrumentality—a belt— in disciplining him, which Theo admitted. Therefore, we conclude Theo's argument is unavailing. Moreover, the judge found abuse was established by Theo's infliction of excessive corporal punishment under N.J.S.A. 9:6-8.21(c)(4)(b). Therefore, the judge correctly found the Division met its burden of proof under N.J.S.A. 9:6-8.21(c)(4).

To the extent we have not already addressed them, any additional arguments Theo raises on appeal lack sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0452-23